UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-62780-CIV-COHN

CHRISTOPHER BROPHY
and TARA LEWIS,

    Appellants,

v.

SONIA SALKIN, as Chapter 7 Trustee
for the Estate of the Debtor,

    Appellee.
_____/

## OPINION AND ORDER AFFIRMING RULINGS OF BANKRUPTCY COURT

**THIS CAUSE** is before the Court upon the Amended Notice of Appeal [DE 4] filed by Christopher Brophy and Tara Lewis, the Court-appointed lead plaintiffs on behalf of the Plaintiff Class in the In re Jiangbo Pharmaceuticals, Inc. Securities Litigation.  The Court has reviewed parties' briefs, the record in this case, and is otherwise advised in the premises.  For the reasons discussed herein, the Court affirms each of the Bankruptcy Court's rulings at issue.

## I. BACKGROUND

This bankruptcy appeal arises from two orders of the Bankruptcy Court: (1) the Order Granting Motion, as Amended, of Chapter 7 Trustee: to Approve Settlement and Compromise of Controversy with Elsa Sung and Request for Entry of a Bar Order and Denying the Motion for Relief from Stay ("Settlement Order"); and (2) the Bar Order Pursuant to Settlement Agreement Between and Among: (I) Chapter 7 Trustee Sonya L. Salkin; (II) Former Officer of Debtor, Elsa Sung; and (III) National Union Fire Insurance Company of Pittsburgh, PA ("Bar Order") (collectively, "Orders").  See DE 9 at 1, Exs.

1–2.  In this appeal, Appellants Christopher Brophy and Tara Lewis (aka "Securities Plaintiffs") challenge the Settlement Order and the Bar Order, which enjoins them from further prosecuting a securities class action as lead plaintiffs against former directors and officers ("D&O") of the Debtor, Jiangbo Pharmaceuticals, Inc., f/k/a Genesis Pharmaceuticals Enterprises, Inc. ("Jiangbo").  Id. at 1–2.  Appellee Sonya Salkin is the Chapter 7 Trustee of the bankruptcy estate of Jiangbo ("Estate") and seeks affirmance of both Orders.  See DE 13.  The heart of the dispute is Appellants' ability to seek monies from Jiangbo's Executive and Organization Liability Policy ("D&O Policy"), which covered certain claims against Jiangbo and its D&O.

On June 6, 2011, the independent members of Jiangbo's audit committee resigned after the company's management repeatedly obstructed the committee's investigation into matters raised by an SEC investigation.  DE 9 at 6.  Thereafter, the members of Jiangbo's senior management "wholly abandoned U.S. legal and financial obligations," ultimately causing the company to be dissolved by the State of Florida.  Id. at 7.  All of Jiangbo's assets except for its D&O Policy were located offshore.  Id.

In July 2011, shareholders of Jiangbo commenced a class action lawsuit in the Southern District of Florida alleging violations of U.S. securities laws ("Securities Class Action"), and in November 2011, Appellants were appointed lead plaintiffs.  Id.  In August 2012, the Court dismissed the securities fraud claims against Jiangbo's former auditor, Frazer LLP ("Frazer"), and its former Chief Financial Officer, Elsa Sung, who was the only Jiangbo D&O to defend the claims.  DE 9, Ex. 1 at 12.  The Court concluded that the Securities Plaintiffs had sufficiently alleged false statements by Jiangbo but failed to adequately plead scienter as to Sung and Frazer.  DE 9 at 7.  The Eleventh Circuit affirmed the District Court's order, but the Securities Class Action

remains pending as to Jiangbo and its China-based executives, against whom Appellants have moved for default judgments.  Id. at 8; DE 13 at 4.

In October 2011, certain shareholders of Jiangbo commenced a separate class action seeking an award of damages against certain Jiangbo D&O for breach of fiduciary duty, corporate waste, and gross mismanagement, and against Sung for aiding and abetting breach of fiduciary duty ("Shareholder Derivative Action").  DE 13 at 3–4.  On March 13, 2013, Pope Investments, LLC, Hua-Mei 21st Century Partners, LP, and Guerilla Partners, LP, filed a Chapter 7 Involuntary Petition ("Petition") against Jiangbo, and on April 17, 3013, Appellee was appointed Chapter 7 Trustee.  Id.  As Trustee, Appellee removed the Shareholder Derivative Action to the Bankruptcy Court and instituted an adversary proceeding ("Removed D&O Action"), intervened as the sole plaintiff in that action, and exercised an automatic stay in the Securities Class Action as to Jiangbo.  DE 9 at 8, 10; DE 13 at 4.

Prior to filing the Shareholder Action or the Petition, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") issued the D&O Policy (No. 01-421-72-35), covering certain claims against Jiangbo and its D&O during the one-year policy period beginning December 14, 2009.  DE 9 at 8.  The D&O Policy is a "wasting asset" policy with a limit of $3 million, meaning that the assets deplete with payment of covered defense costs.  Id. at 9; DE 13 at 5.  As of September 2014, National Union had expended approximately $1.25 million in defense fees and costs under the D&O Policy in connection with the Securities Litigation, Shareholder Derivative Action, and Removed D&O Action.  DE 9 at 9.

On January 31, 2014, the Bankruptcy Court entered an Agreed Order requiring Appellants, Appellee, and Sung to participate in mediation.  DE 13 at 5.  Appellee,

3

Sung, and National Union ("Settling Parties") agreed to an initial settlement in which Appellee, as Trustee, would receive $595,000 from the D&O Policy and National Union would retain the balance of the remaining coverage. DE 13 at 6. The agreement was conditioned on the Bankruptcy Court's approval of a bar order, and Appellants filed a limited objection to that provision. Id. The Settling Parties amended the agreement ("Amended Settlement"), increasing Appellee's settlement payment to $900,000, but again conditioning the settlement on a bar order. DE 9 at 11. The Bankruptcy Court held an evidentiary hearing on the Amended Settlement on September 19, 2014. DE 13 at 8. Appellee testified that she was concerned that continued litigation against Sung in the Removed D&O Action and the pending appeals would substantially deplete the available remaining insurance proceeds, decreasing the amount available to satisfy a potential judgment, and that a significant portion of the remaining proceeds would be expended on defense costs without a prompt settlement. Id. at 9.

After applying the factors set forth in In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990), the Bankruptcy Court determined that "the Amended Settlement is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the best interests of the Estate because the settlement: (i) precludes any risks associated with litigation and collection in this matter; (ii) provides a dividend available to creditors; and (iii) allows for a distribution of the proceeds within a reasonable time." DE 9, Ex. 1 at 9. The Bankruptcy Court further determined that the "Bar Order satisfies the requisite standard under the prevailing law in the Eleventh Circuit and is fair and equitable." Id. The Bankruptcy Court entered the Settlement Order and Bar Order on November 20, 2014, and denied Appellants' motion for relief from the automatic stay. See DE 9, Exs. 1–2.

Appellants responded to the Orders by filing briefs before this Court arguing that the Bankruptcy Court lacked authority to bar their securities fraud claims, the Bar Order was unfair and inequitable as a matter of law, and the automatic stay should be lifted to allow Appellants to pursue their claims against Jiangbo.  See DE 9, 20.  The Bar Order effectively prevents Appellants from pursuing their securities fraud claims, and because Appellants' claims are subordinated to approximately $28 million in general unsecured creditor claims, they are also unlikely to receive payment from the Amended Settlement. Id. at 2.  Appellee filed an opposing brief arguing that the Bankruptcy Court properly acted within its jurisdiction and discretion and seeking affirmance of the Orders.  See DE 13.

The Court now will turn to the substance of the arguments that the parties have raised in their briefs.  Arguments not raised in the briefs are waived.  See, e.g., Bank of Am., N.A. v. Mukamai (In re Egidi), 571 F.3d 1156, 1163 (11th Cir. 2009).

## II.   JURISDICTION

The federal district courts are courts of limited jurisdiction.  Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003).  In appeals from the bankruptcy courts, a district court has jurisdiction to review three types of orders: (1) final orders; (2) interlocutory appeals relating to certain orders issued under 11 U.S.C. § 1121(d); and (3) other interlocutory orders, only by leave of the court.  Neidich v. Lorenzo (In re Lorenzo), No. 13-23100, 2014 WL 1877408 at *2 (S.D. Fla. May 9, 2014).  In this appeal, the Bankruptcy Court's Settlement Order and Bar Order constitute "final orders" and are therefore properly before this Court.

## III. LEGAL STANDARD

In reviewing the Bankruptcy Court's merits determinations, this Court examines factual determinations for clear error and legal conclusions *de novo*. HDR Architecture, P.C. v. Maguire Grp. Holdings, 523 B.R. 879, 885-86 (S.D. Fla. 2014).  Discretionary determinations, including the approval of settlements or compromises, are reviewed for abuse of discretion.  In re Superior Homes & Invs., LLC, No. 12-15451, 2013 WL 2477057 at *2 (11th Cir. June 10, 2013).  An abuse of discretion occurs when the ruling is "founded on an error of law or misapplication of the law to the facts."  HDR Architecture, P.C., 523 B.R. at 887 (quoting Park Nat. Bank v. Univ. Ctr. Hotel, Inc., No. 1:06-cv-00077-MP-AK, 2007 WL 604936 at *1 (N.D. Fla. Feb. 22, 2007)).

## IV. DISCUSSION

When determining whether to enter a bar order against a non-settling party, the court must reasonably determine that the bar order is fair and equitable.  U.S. Oil & Gas v. Wolfson, 967 F.2d 489, 496 (11th Cir.1992).  Bar orders incorporated into settlements are considered fair and equitable if: (1) the bar order fulfills the long-standing public policy of encouraging pretrial settlements; (2) the settlement satisfies the requirements for the approval of settlements under Justice Oaks for a fair and reasonable agreement; and (3) the bar order satisfies the nonexclusive set of factors for approval of bar orders set forth in Matter of Munford, Inc., 97 F.3d 449 (11th Cir. 1996).  See id. at 454–55. The Munford factors include: (1) the non-debtor third-party claims which will be barred are "interrelated" with the estate's claims; (2) the parties opposed to the bar order have not presented sufficient evidence of the strength and existence of their claims against the beneficiary of the bar order; (3) the estate's litigation against the beneficiary of the

6

bar order is complex; and (4) the continued litigation by the estate and other parties against the beneficiary of the bar order will deplete resources.  See id.

Appellants do not contest that the Settlement Agreement encourages the public policy of pretrial settlement or that, absent the bar-order provision, the Settlement Agreement would be fair and reasonable.  Instead, the parties' disagreement hinges on the first and second Munford factors—whether Appellants' securities fraud claims are sufficiently interrelated with those of the Estate and the relative strength of those claims as to the insurance coverage.  See DE 20 at 1–2.

### A. Interrelatedness of Claims

For a bankruptcy court to issue a bar order as part of a settlement, the non-debtor third-party claims to be barred must be "interrelated" with the estate's claims. See Munford, 97 F.3d at 455.  The Eleventh Circuit has not clearly defined what it means for claims to be interrelated, but it has observed that "a truly independent claim . . . might be *per se* inappropriate to bar."  In re HealthSouth Corp. Sec. Litig., 572 F.3d 854, 865 (11th Cir. 2009).  A claim may be "truly independent" if, for example, it is "not based on the claimants' liability to the instant plaintiffs or claims based on damages completely separate from the instant damages."  AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1311 (11th Cir. 2004).  To date, the Eleventh Circuit has found only cross-claims for indemnity and contribution among co-defendants or similar claims to be interrelated.  It has not decided whether separate claims of a settling estate and a non-settling third-party against the same or similar defendants may be interrelated for the purpose of issuing a bar order.  The Court agrees with the Bankruptcy Court that they can.

7

Specifically, the Court concludes that the Bankruptcy Court did not err in finding Appellants' securities fraud claims sufficiently interrelated with the Estate's claims in the Removed D&O Action.  As the Eleventh Circuit stated in U.S. Oil & Gas with respect to cross-claims, if the claims extinguished by a bar order "arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement." 967 F.2d at 96.  It was not erroneous for the Bankruptcy Court to apply this same standard to claims of settling and non-settling plaintiffs against common defendants, particularly in the absence of clear controlling authority.  The Bankruptcy Court also reasonably concluded in applying this standard that the claims were interrelated because they "arise out of the same common nucleus of operative facts and circumstances and are based on similar, if not identical, acts and omissions."  See DE 9, Ex. 1 at 11.  Both sets of claims "sought damages based upon acts and omissions involving the disclosure of materially inaccurate information to third parties and improper insider transactions." Id.

Appellants challenge the Bankruptcy Court's conclusion, arguing that (1) their claims are truly independent because they (1) are direct claims that seek separate damages from, and are in no way contingent or dependent upon, the Estate's claims that Appellee pursued in the Removed D&O Action, and (2) seek to recover assets that are neither Estate assets nor assets to which Appellee may assert an equitable claim. DE 9 at 18.  Although a court may consider these factors in determining whether Appellants' claims are truly independent, it may nonetheless find the claims interrelated.  The Munford test is controlling, and it simply does not require the barred claims to be property of the estate or dependent upon estate claims to be interrelated.

In <u>In re Van Diepen, P.A.</u>, an unpublished opinion upon which Appellants rely, the Eleventh Circuit affirmed a bar order as part of an approved settlement where the court determined that the barred fraudulent transfer claims were part of the bankruptcy estate.  236 F. App'x 498, 502 (11h Cir. 2007).  Although the Eleventh Circuit mentioned in dicta that the bankruptcy court would not have had "authority to include in a settlement agreement a release of third party non-debtors . . . where their property [was] not part of the bankruptcy estate," <u>id.</u>, the Court does not read this statement as creating a new, binding standard for the interrelatedness of claims.

Appellants also rely heavily upon Judge Cristol's recent order in <u>In re Fontainebleau Las Vegas Holdings, LLC</u>, No. 09-21481-BKC-AJC, ECF No. 4491 (Bankr. S.D. Fla. July 11, 2014), to support their argument that the Bankruptcy Court did not have authority to bar Appellants' securities fraud claims.  <u>See</u> DE 9 at 16; DE 20 at 3.  In considering a bar order similar to the one at hand, Judge Cristol determined that claims for fraud and negligent misrepresentation asserted by non-debtor plaintiffs in a separate state-court action fell within the meaning of "truly independent claims."  <u>In re Fontainebleau</u>, No. 09-21481-BKC-AJC, ECF No. 4491 at 7.  However, Judge Cristol further held that a bar order may nonetheless be appropriate if "unusual circumstances" were present, such as "where the targets of those independent claims were insolvent." <u>Id.</u> at 8.  Although the Court respects Judge Cristol's opinion, his order is not binding on this Court.  And even if it were, under the <u>Fontainebleau</u> framework, this case would contain "unusual circumstances" in which a bar order may be appropriate.  The only recoverable Jiangbo asset in the United States—the D&O Policy—was "wasting" as a result of litigation that was "both complex and expensive" for the Estate to pursue and "would likely be appealed" regardless of the outcome.  DE 9, Ex. 1 at 8.  Absent

9

approval of the Bar Order, the parties would not agree to a settlement, the Estate would not receive the $900,000 to pay its creditors, and the finite recoverable assets of the D&O Policy would likely be expended on litigation costs. Id. at 8–12. Therefore, the Bankruptcy Court did not abuse its discretion in finding the claims sufficiently interrelated, or otherwise the circumstances sufficiently unusual, to warrant a Bar Order.

### B. Likely Success of Barred Claims

The Bankruptcy Court also reasonably concluded that Appellants failed to prove that their claims were likely to succeed. Under Munford, the non-settling party must demonstrate that it is likely to succeed on the merits if its claims are permitted to go forward. See Munford, 97 F.3d at 455. The Bankruptcy Court reasonably determined that Appellants had not met this burden. First, at the time the Orders were entered, the District Court had already dismissed the Securities Class Action against Sung and Frazier, DE 9, Ex. 1 at 11–12, and the Eleventh Circuit has since affirmed the dismissal, DE 9 at 8; DE 13 at 4. Second, the Bankruptcy Court concluded that Appellants' claims against Jiangbo and its D&O other than Sung were also unlikely to succeed. DE 9, Ex. 1 at 12. The D&O Policy required each insured to give National Union full cooperation and defend claims against the Policy, but only Sung had done so in the Securities Class Action. Id. Therefore, National Union denied coverage to Jiangbo and the insured individuals, except for Sung, and the clerk entered defaults against them. Id.

Appellants contend that the Bankruptcy Court did not apply the correct legal standard in assessing the likely success of their claims. DE 9 at 19. Under Florida law, to constitute a breach of policy "lack of cooperation must be material and the insurance company must show that it was substantially prejudiced in the particular case by the failure to cooperate." Am. Fire & Cas. Co. v. Vliet, 4 So. 2d 862, 863 (Fla. 1941).

10

Although the Bankruptcy Court did not use the term "prejudice," it appropriately considered how "failure to defend resulted in clerk's defaults," DE 9, Ex. 1 at 12, which is a form of prejudice to National Union.

Appellants further argue that the Bankruptcy Court failed to adequately assess the prejudice suffered by National Union, because this Court could vacate the defaults for "good cause" if Appellee, as Trustee, so requested. DE 9 at 19. However, Appellants have already moved for default judgments, id. at 8, and it does not appear that Appellee expressed to the Bankruptcy Court any intent to vacate the defaults. Nor has she expressed such intent in this appeal. See DE 13. When the Bankruptcy Court issued its Order, the possibility that Appellee would move to vacate the defaults would have been mere speculation. The Bankruptcy Court reasonably concluded that under such circumstances that National Union justifiably denied coverage to Jiangbo and its D&O, except for Sung, under Florida law, and that Appellants, therefore, were unlikely to prevail on their securities fraud claims.

Finally, Appellants argue that "the proposed Bar Order cannot be deemed fair and equitable because it provides *no compensation whatsoever* to the Securities Plaintiffs for the extinguishment of their claims." DE 9 at 19. However, because the Bankruptcy Court justifiably concluded that Appellants were unlikely to succeed on the merits of their claims, it did not abuse its discretion in approving a settlement that did not provide compensation to Appellants for those claims.

Finding all elements of the Munford test satisfied, the Court concludes that the Bankruptcy Court did not abuse its discretion in issuing the Settlement Order and Bar Order and that the Bar Order was fair and equitable as a matter of law. Furthermore,

11

the Bankruptcy Court properly denied as moot Appellants' motion for stay relief in light of the Orders.

## V. CONCLUSION

For the reasons discussed herein, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order Granting Motion, as Amended, of Chapter 7 Trustee: to Approve Settlement and Compromise of Controversy with Elsa Sung and Request for Entry of a Bar Order and Denying the Motion for Relief from Stay ("Settlement Order") and Bar Order Pursuant to Settlement Agreement Between and Among: (I) Chapter 7 Trustee Sonya L. Salkin; (II) Former Officer of Debtor, Elsa Sung; and (III) National Union Fire Insurance Company of Pittsburgh, PA ("Bar Order") are **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of September, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF

12